215 So.2d 203 (1968)
Archie G. TAYLOR, Individually and as Administrator of the Estate of his minor daughter, Dale Rena Taylor, Plaintiff-Appellee-Appellant,
v.
NATIONAL INDEMNITY COMPANY, Defendant-Appellant-Appellee.
No. 2462.
Court of Appeal of Louisiana, Third Circuit.
October 31, 1968.
*204 Pharis & Pharis, by James A. Pharis, Jr., Alexandria, for plaintiff-appellant.
Gist, Methvin & Trimble, by David A. Hughes, Alexandria, Stafford & Pitts, by Grove Stafford, Jr., Alexandria, for defendant-appellee.
Before TATE, FRUGE and CULPEPPER, JJ.
FRUGE, Judge.
This is an action by Archie G. Taylor, for personal injuries sustained by his daughter, Dale Rena Taylor, who at the time of the accident was approximately six and one-half-years old.
On September 18, 1965, between 11:00 and 11:45 a. m., Mrs. Archie G. Taylor went with two of her daughters to visit another daughter, Mrs. Sylvia Ann Greer, at Highway 71 Courts near Pineville, Louisiana. Mrs. Greer, the manager of Highway 71 Courts, was the wife of the *205 insured named in defendant's Owners, Landlords, and Tenants insurance policy.
Within a few minutes after Mrs. Taylor arrived at Highway 71 Courts, her daughter, Dale Rena, left the building in the company of two boys and went to play outside. These boys were being cared for by Mrs. Greer for pay. Within fifteen minutes after their arrival, one of the boys came into the house, where all the adults had remained, and reported that Dale Rena was hurt.
Located on the premises was a storm cellar. This storm cellar was a concrete building eight feet high with a flat roof, with square sides of approximately eleven feet. The base of this cellar was located in an excavation either manmade or natural. A sidewalk with five steps lead down to the front door of the cellar. On the same level with the cellar floor was a flat, concrete area, surrounded by a concrete ceiling ledge, as well as a frame bar-be-que house. In the middle was a concrete table with a concrete bench. As one descends to the steps to get to the concrete patio, the storm cellar is immediately to the right of the bottom landing. There was a small mound of dirt banked up against the side of the cellar, of sufficient height that the distance from the top of this mound of dirt to the top of the roof of the cellar was three and one-tenth feet. Without this mound the distance from the gravel on the side of the building to the roof was four feet.
The court would not permit Dale Rena to testify, as it decided she did not understand the taking of the oath. Mrs. Taylor testified that at first her daughter had told her that one of her playmates had pushed her from the cellar roof. On a subsequent occasion, while Mrs. Taylor was reading some religious material to her daughter, Dale Rena began to cry and told her mother that the boys did not push her from the cellar, but that she had stepped off the top while she was sweeping the roof of the cellar.
It was not disputed that Dale Rena fell from the roof of the storm cellar to the concrete patio, eight and one-half feet below, and sustained Colles fractures of both wrists, as a result of the fall. Plaintiff sued for damages because of the injury to his daughter and for medical expenses.
The trial court awarded judgment in favor of defendants. In its reasons for judgment, it declared that the doctrine of attractive nuisance was not applicable as pleaded by plaintiff, and that, therefore, there could be no recovery. In the specifications of error, plaintiff-appellant urges that the trial court should be reversed for following reasons:
1. That the injured child was wrongly classified as a trespasser, contrary to the law and evidence.
2. That the duty owed to the injured child was the duty owed an invitee, not a trespasser under the Attractive Nuisance Doctrine, and that this duty was breached.
3. That the injured child was not guilty of contributory negligence or assumption of risk resulting in her injury.
As to these allegations of error, we shall consider each separately.
1. Attractive Nuisance
Plaintiff-appellant complains that this case should not be governed by the applicability or not of the attractive nuisance doctrine but rather by the question of negligence as regards "invitees".
This court finds it unnecessary to discuss the application of the doctrine as clearly the plaintiff's daughter was an invitee. The doctrine has been primarily used to define the duty owed a trespassing child. Since the daughter was a social guest, she was definitely within the category of invitees, to whom the duty is jurisprudentially clear. Alexander v. General Accident, Fire and Life Assurance *206 Corp., 98 So.2d 730 (La.App. 1st Cir., 1957).
2. Negligence
Let us look at what the jurisprudence has said is the duty owed to invitees.[1] The landowner is not the insurer against the possibility of accident. Daire v. Southern Farm Bureau Casualty Insurance Co., 143 So.2d 389 (La.App. 3d Cir., 1962) cert. denied, 1962.
"An invitee is a person who goes on the premises with the express or implied invitation of the occupant on the business of the latter or for their mutual advantage; and to him, the duty owed is that of reasonable and ordinary care, which includes the prior discovery of reasonably discoverable conditions of the premises that may be unreasonably dangerous, and correction thereof or a warning to the invitee of the danger." (Emphasis theirs.)
Alexander v. General Accident Fire and Life Assurance Corp., 98 So.2d 730, at page 732 (La.App. 1st Cir., 1957).
"The owner, occupant or person in charge of property owes to an invitee * * * the duty of exercising reasonable or ordinary care for his safety and is liable for injury resulting from breach of such duty. This duty includes that of exercising reasonable care to keep the premises in a reasonably safe and suitable condition or of warning invitees * * * of hidden or concealed perils of which he knows or should know in the exercise of reasonable care, so that those whom he has invited to enter upon or use his property shall not be unnecessarily or unreasonably exposed to danger. * * *"
Savell v. Foster, 149 So.2d 210, 212 (La. App.2d Cir., 1963) cert denied. See also Foggin v. General Guaranty Insurance Co., 250 La. 347, 195 So.2d 636, 640, 641 (1967); Jopling v. Short Cut White Kitchen, Inc., 204 So.2d 128 (La.App. 1st Cir., 1967), and Levert v. Travelers Indemnity Co., 140 So.2d 811, 813 (La.App. 3d Cir., 1962) and cases cited therein.
In line with plaintiff's allegations of error, it can be seen that the real question to be decided here is the negligence of the defendants in light of the duty propounded by the jurisprudence as owed to an invitee.
Negligence has been defined as the breach of the duty to protect against an unreasonable risk of foreseeable harm to others. A factor in determining the reasonableness of the risk is whether the magnitude of the risk created outweighs the utility or social value of the conduct creating it. Goff v. Carlino, 181 So.2d 426 (La.App. 3d Cir., 1965), cert. denied, 248 La. 1033, 183 So.2d 653 (1966), and citations therein.
Applying this definition of negligence, and the duty owed to an invitee to the facts at hand, we find that there are several conditions necessary to establish negligence of the defendant.
There is a need for a dangerous condition. There is little question that almost anything can, at some time or another, be dangerous. Because of the height of the storm cellar from the concrete patio and the possibility that someone might fall onto the concrete patio from the roof, it could be said there was a degree of danger. However, in addition to the condition's being dangerous, it must constitute a hazard which the invitee could not be expected to observe by the exercise of reasonable care.
Ordinarily, there is a need for some inherent danger, some snare, some pitfall, that the average, reasonable invitee may not be aware of. In the case of Crittenden v. Fidelity and Casualty Company of New *207 York, 83 So.2d 538 (La.App.2d Cir., 1955) the court cited 65 C.J.S. Negligence § 50, page 541, in explaining this necessity for liability:
"`The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal, obvious, or ordinary risks * * * and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers.'"
Where a small child is the invitee, the obligation of the owner to protect unsuspecting persons becomes more onerous for the obvious reason that children are immature, their experience limited and hence they are more unsuspecting; less aware; less appreciative of the danger. Duxworth v. Pat Caffey Contractor, Inc., 209 So.2d 497 at 500 (La.App. 4th Cir., 1968), writs refused.
In this case, although the roof of the cellar is eight and one-half feet off the patio floor, we cannot find that this constituted an inherently dangerous or perilous condition. The roof was just a stable, stationary object of which the only possibility of injury would be a fall. This danger would be encountered by such a child in almost any type of playground equipment.
In this case, the only hazard allegedly maintained was the presence of the storm cellar and its flat roof, and the little mound allowing easy access to it, with the possibility that a child might fall. Such a possibility by itself does not create so unreasonable a risk of injury as to impose a duty to inhibit children's access to the otherwise un-dangerous climbable object. See Stanley v. Missouri Pacific Railroad Co., 179 So.2d 490 (La.App.3d Cir., 1965); 152 A.L.R. 1263, and 145 A.L.R. 322.
In the case of Miller v. Southern Farm Bureau Casualty Insurance Co., 189 So.2d 463 (La.App.3d Cir., 1966), writ refused October 21, 1966, a five year old child pulled on a gate that toppled onto him. In finding that there was no liability on the landowner, this court stated, "It was probably within the realm of foreseeability that the gate involved herein would fall and cause injuries if pulled on or climbed upon. However, the question to be determined is whether the risk was unreasonable." (Page 464). In this case, we find no legal basis to say that the existence of the mound permitting access to the roof, or of the roof with no protective bannister or railing, created an unreasonable risk of injury to a child.
We find, as the trial court did, that the people involved in this case did not anticipate an accident, for otherwise, the child's mother would have taken precautions to prevent it. It is easier for us at this time to look back and say that an accident was imminent, than it was to the parties at the time that the accident occurred. This court is of the opinion that this danger, if it is to be considered such, was not one other than those ordinarily encountered, and that the defendants were not negligent.
In his brief and in oral argument, counsel for plaintiffs argues that a rope which Mrs. Greer had aided the boys attach to a vent pipe protruding from the roof of the cellar, constituted negligence in that it was an invitation or attraction to children to play on the roof. Since we have found the lack of negligence on the part of the defendants in allowing children to play on the roof, and since the record is absolutely free from any mention of the rope as a cause of the fall of the plaintiff's daughter, we find no merit in this contention.
3. Contributory Negligence or Assumption of Risk
Having found no negligence on the part of the defendants, it is unnecessary for us to discuss this contention.
*208 For the foregoing reasons, this court finds that the lower court's judgment in favor of the defendant should be affirmed. Costs of this appeal are to be paid by plaintiff-appellee-appellant.
Affirmed.
NOTES
[1] For an excellent discussion of the law of negligence as applied to invitees, see Comment, "Invitee Status in Louisiana", 27 La.Law Rev., 796 (1967).